UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ALLEN WILLIAMS,**

        Plaintiff,

                              Case No.      05-73356

v.

                              HONORABLE DENISE PAGE HOOD

**WMC MORTGAGE CORP. et. al.,**

        Defendants.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

This matter is before the Court on Defendant Litton Loan Servicing, LP's Motion for Summary Judgment, filed February 21, 2006. Plaintiff filed a Response on May 31, 2006 and Defendant filed a Reply on June 05, 2006. Also on the docket is Defendant Countywide Home Loans' Motion for Summary Judgment filed April 10, 2006, which will not be addressed at this time.[1]

**II.    STATEMENT OF FACTS**

Plaintiff, Allen Williams, entered into a contract ("the Mortgage") with Defendant WMC Mortgage Corp. ("WMC Mortgage") whereby he purchased a mortgage on the property located at 8881 Northlawn Street in Detroit MI, in April of 2002. (Compl. ¶ 3). Defendants Countrywide Home Loans ("Countrywide") and Litton Loan Servicing, LP ("Litton Loan") entered into the

---

[1] The Court has received stipulated orders dismissing the case as to Defendant Countrywide Home Loans and Defendant WMC Mortgage Corporation. As such, only Defendant Litton Loan Servicing, LP's Motion for Summary Judgement need be addressed.

Mortgage through assignment. *Id*. When Plaintiff agreed to the Mortgage in 2002, he was required to pay $886.62 monthly. (Compl. ¶ 4). In July of 2002 the Mortgage was sold to Defendant Countrywide who informed the Plaintiff that he was required to maintain an escrow account and that his payment was adjusted to $1,262.00. (Compl. ¶ 5). Plaintiff was informed that the increase in payment was to account for delinquent taxes in 2000 and 2001. (Compl. ¶ 6). Defendant Countrywide paid the amount that was allegedly delinquent. (Compl. ¶ 7-8). After Defendant Countrywide paid the allegedly delinquent taxes, the City of Detroit informed the Plaintiff that the taxes were not delinquent. (Compl. ¶ 8). Defendant Countrywide informed the Plaintiff that if he made a lump sum payment of $3,546.00 his mortgage payment would be returned to the original amount. (Compl. ¶ 11). Plaintiff made the requested payment, and his mortgage payment was not returned to the original amount. *Id*. Defendant Litton Loan admitted that a double payment of taxes occurred causing Plaintiff's negative escrow account. (Compl. ¶ 13). Plaintiff filed the Complaint on August 30, 2005 alleging breach of contract, violation of the Michigan Consumer Protection Act and intentional and negligent infliction of emotional distress.

### III.    STANDARD OF REVIEW

Pursuant to Rule 56(c), summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing no dispute as to any material issue. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). A dispute must be evident from the evidence in order to deny such a motion. Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence.

Fed.R.Civ.P. 56(e). When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

## IV.   APPLICABLE LAW & ANALYSIS

Defendant Litton Loan argues that summary judgment is appropriate for three reasons: (1) the Plaintiff agreed to arbitrate all claims; (2) Plaintiff's intentional or negligent infliction of emotional distress claims are not cognizable under Michigan law; and (3) the Michigan Consumer Protection Act does not apply to the transaction at issue.

### A.   Arbitration

Defendant Litton Loan claims that the current action should be dismissed because the parties have agreed to arbitrate any disputes. Both Michigan and federal public policy favor the enforcement of arbitration clauses. *Rembert v. Ryan's Family Steak Houses, Inc.*, 235 Mich.App. 118, 127-135 (Mich.App. 1999). On the federal level, arbitration agreements are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et. seq.. The FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Michigan Arbitration Act ("MAA") governs the enforcement of arbitration clauses in Michigan. The MAA reads:

> A provision in a written contract to settle by arbitration under this chapter, a controversy thereafter arising between the parties to the contract, with relation thereto, and in which it is agreed that a judgment of any circuit court may be rendered upon the award made pursuant to such agreement, shall be valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the rescission or revocation of any contract. Such an agreement shall stand as a

> submission to arbitration of any controversy arising under said contract not expressly exempt from arbitration by the terms of the contract. Any arbitration had in pursuance of such agreement shall proceed and the award reached thereby shall be enforced under this chapter.

M.C.L. 600.5001(2). Under both statutes, parties' agreements to submit to arbitration are binding and enforceable.

Defendant Litton Loan argues that Plaintiff agreed to arbitrate all claims. The arbitration agreement, signed by Plaintiff and Defendant WMC Mortgage reads, in relevant part:

> Often a telephone call to us will resolve the matter amicably and as quickly as possible. However, if you and we are not able to resolve our differences informally, you and we agree that any dispute, regardless of when it arose, shall be settled, *at your option or ours*, by arbitration in accordance with the Agreement.

(Def.'s Mot. Summ. J., Ex. B) (emphasis added). The agreement further states:

> Arbitration is a means of having an independent third party resolve a dispute. Either you or we can request that a dispute be submitted to arbitration. Either you or we can do this before a lawsuit (which is usually initiated by the filing of a "complaint") has been served or within 60 days after a complaint, an answer, a counter-claim or an amendment to a complaint has been served.

*Id*. The arbitration agreement further reads:

> *IF ARBITRATION IS CHOSEN* BY ANY PARTY WITH RESPECT TO A DISPUTE, *NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT DISPUTE IN COURT* OR TO HAVE A JURY TRIAL ON THAT DISPUTE, OR TO ENGAGE IN PREARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE ARBITRATION RULES. FURTHER, YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY DISPUTE SUBJECT TO ARBITRATION. THE ARBITRATOR'S DECISION WILL GENERALLY BE FINAL AND BINDING. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION. IT IS IMPORTANT THAT YOU READ THIS ENTIRE DOCUMENT CAREFULLY BEFORE SIGNING.

*Id*. (emphasis added).

Plaintiff responds that Defendant Litton Loan has not requested that the matter be submitted to arbitration in the time frame provided by the arbitration agreement. (Pl.'s Resp. at 6). A party

who claims an opponent waived the right to arbitration bears a heavy burden of proof. *Kauffman v. The Chicago Corp.*, 187 Mich. App. 284, 292; 466 N.W.2d 726 (1991). "The party must demonstrate knowledge of an existing right to compel arbitration, acts inconsistent with the arbitration right, and prejudice to the party opposing arbitration resulting from the inconsistent acts." *Id.* (Def.'s Reply at 2). Defendant Litton Loan had knowledge of the right to compel arbitration and requested the matter be resolved through arbitration as an affirmative defense in its answer and in the instant motion. There is no showing that Defendant Litton Loan has at any time acted inconsistent with their claimed right to arbitration or that there is any prejudice to Plaintiff. *See Kauffman*, 187 Mich. App. at 292. As such, the Court agrees that Defendant Litton Loan's demand for arbitration is not waived.[2]

Plaintiff also points to the exceptions contained in the arbitration agreement, which reads: "The following are not "disputes" subject to this Agreement: (1) any judicial or non-judicial foreclosure proceeding against any real or personal property that serves as collateral for the loan . . ." (Pl.'s Mot. Summ. J. at 6). Here, Plaintiff argues that because threats of foreclosure are the factual bases of their complaint, and Plaintiff was granted a temporary restraining order/show cause preventing Defendants from foreclosing on the subject property, the matter falls within this exception. *Id.* In the present action, Plaintiff alleges breach of contract, violation of the Michigan Consumer Protection Act and intentional and negligent infliction of emotional distress. This is not a judicial or non-judicial foreclosure proceeding as exempted by the arbitration agreement. The Court finds that the plain language of the arbitration agreement precludes a finding that this action

---

[2] Although we are bound by *Kauffman*, the Court must note that the express language of the arbitration agreement calls for some affirmative act to initiate arbitration that is not clear was required in *Kauffman*. Specifically, the agreement states that arbitration must be initiated through the American Arbitration Association and details penalties for failure to make a "proper demand". (Def.'s Mot. Summ. J., Ex. B).

is within an exception to the arbitration agreement.

Lastly, Plaintiff argues that the arbitration agreement was a contract of adhesion and is therefore unconscionable. (Pl.'s Mot. Summ. J. at 7). "A contract is an 'adhesion contract' only if the party agrees to the contract because he has no meaningful choice to obtain the desired goods or services elsewhere." *Rembert v. Ryan's Family Steak Houses, Inc.*, 596 N.W.2d 208, 226 (1999). Courts will not invalidate contracts as adhesion contracts where the challenged provision is reasonable. *Id.* In the instant case, although Plaintiff argues that he was not presented with options as to whether or not he could refuse to execute the arbitration agreement in the context of the loan, it can hardly be alleged that Plaintiff had no meaningful choice with regard to loan providers. *See id.* Moreover, Plaintiff's assertion that there are questions surrounding whether he knowingly signed the agreement are not supported by any evidence presently before the Court. Plaintiff has failed to meet his burden that the arbitration agreement is unconscionable.

### B.     Intentional/Negligent Infliction of Emotional Distress Claims

Count III of the Complaint alleges intentional and negligent infliction of emotional distress. In order to establish a claim of intentional infliction of emotional distress, plaintiff must prove (1) extreme and outrageous conduct on the part of the defendant; (2) intent or recklessness; (3) causation, and (4) severe emotional distress. *Pratt v. Brown Mach. Co.*, 855 F.2d 1225, 1239 (6th Cir. 1988); *Roberts v. Auto-Owners Ins.*, 422 Mich. 594, 602; 374 N.W.2d 905 (1985); *Haverbush v. Powelson*, 217 Mich. App. 228, 234; 551 N.W.2d 206 (1996); *Linebaugh v. Sheraton Michigan Corp.*, 198 Mich. App. 335, 342; 497 N.W.2d 585 (1993). Regarding the first element of an emotional distress claim, the Michigan Court of Appeals has articulated the following standard for determining whether conduct is extreme and outrageous:

> In reviewing such a claim, it is initially for the court to determine whether the defendant's conduct reasonably may be regarded as so extreme and outrageous as to

> permit recovery. However, where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

*Doe v. Mills*, 824, 212 Mich. App. 73, 91-92; 536 N.W.2d 824 (1995) (citations omitted). Plaintiff fails to present the Court with any evidence to support his claim of intentional infliction of emotional distress on the part of Defendant Litton Loan. The Court finds Plaintiff has not pled sufficient facts to rise to the level of extreme and outrageous conduct as defined in *Doe* and as a matter of law.

With respect to Plaintiff's negligent infliction of emotional distress claim, Defendant argues that this claim is an action in tort, not in contract, and as such should be dismissed. (Def.'s Mot. at 8). Plaintiff alleges the claim arises out of Defendants alleged overpayment of taxes, threats of foreclosure and harassment. (Compl. ¶ 21). The injury considered for a negligent infliction of emotional distress action is a mental or emotional injury which is caused by the negligence of another and is not directly brought about from physical injury but may be manifested by physical symptoms. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 544 (1994). Such mental or emotional injury is separate from tort law concepts of pain and suffering. *Id*. Michigan courts have declined to extend the tort of negligent infliction of emotional distress beyond the circumstance where the plaintiff witnesses the negligent injury to a third person and suffers mental disturbance as a result of witnessing such injury. *Durn v. The Detroit News, Inc.*, 200 Mich.App. 622, 629 (Mich.App. 1993); *see also Teadt v. Lutheran Church Missouri Synod*, 237 Mich.App. 567, 582 note. 6 (Mich.App. 1999).

Plaintiff does not allege that he witnessed the injury, caused by Defendants' negligence, of a third person. Nor does Plaintiff present the court with any evidence to support his allegations. As such, under Michigan law, Plaintiff cannot sustain a claim of negligent infliction of emotional distress, and summary judgment is appropriate as to Plaintiff's negligent infliction of emotional

2:05-cv-73356-DPH-VMM   Doc # 19   Filed 09/29/06   Pg 8 of 8   Pg ID 276

distress claim.

      **C.**      **Applicability of Michigan Consumer Protection Act**

Plaintiff concedes that the Michigan Consumer Protection Act exempts mortgage transactions, which are the subject of the present dispute. (Pl.'s Resp. at 8). Plaintiff's claims under the Michigan Consumer Protection Act are dismissed.

Accordingly,

IT IS HEREBY ORDERED that Defendant Litton Loan Servicing, LP's Motion for Summary Judgment **[Docket No. 8, filed February 21, 2006]** is GRANTED.

                                              S/Denise Page Hood
                                              Denise Page Hood
                                              United States District Judge

Dated: September 29, 2006

      I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2006, by electronic and/or ordinary mail.

                                              S/William F. Lewis
                                              Case Manager